**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT MITCHELL,

    Plaintiff,                                         Hon. Lawrence J. Zatkoff

vs.                                                            Case No. 05 - 73698

COUNTY OF WAYNE, KAREN
KREYGER and HAROLD CURETON,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on December 8, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment. Plaintiff has filed a response and Defendants have replied. The Court finds that the facts and legal arguments pertinent to Defendants' Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendants' Motion for Summary Judgment is DENIED.

## II. BACKGROUND

Plaintiff is a former Deputy for the Wayne County Sheriff's Department (the "Department").

He was hired on January 19, 1993, and was terminated from Wayne County employment on April 1, 2005, by Defendants Harold Cureton, the Undersheriff for the Department, and Karen Kreyger, a Commander in the Department ("Kreyger").  Defendants claim that Plaintiff was terminated for Violating Standards of Conduct–specifically, 2.0 Violation of Rules, 5.110 Unsatisfactory Performances, and 5.60 Insubordination/Obeying Orders.  The violations stem from Plaintiff's failure to "appear at Mercy Occupational Medical Services ["MOMS" or "Clinic"] for a random drug screen scheduled for February 23, 2005 at 8:15 a.m.  Plaintiff claims that his termination was in violation of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq.

At the time of his termination, Plaintiff worked the day shift, which began at 7:00 a.m.  While at work on February 22, 2005, Plaintiff was served with a written order to so appear for a random drug screen on February 23, 2005, at 8:15 a.m.  Upon being served with the drug screening notice, Plaintiff asked Sgt. Sabbagh if he could report to the clinic and take the drug screen immediately.  Sgt. Sabbagh indicated that he did not have the authority to authorize this request.  After leaving work on February 22, 2005, Plaintiff claims he walked "out of my house and slipped on the ice on the porch and fell on my back, on the back of my head and my lower–heard something, like pop."  Plaintiff called midnight shift command on the morning of February 23, 2005 at approximately 5:20 a.m., to report off sick and claimed that "my back is screwed up. I can't get to work.  I was supposed to take a test but I ain't going to make it because, obviously, I ain't driving nowhere."

Sometime between 8:00 a.m. and 9:00 a.m., Plaintiff called his parents asking them to take him to "see somebody about [his] back."  Plaintiff testified that he did not go back to bed after his 5:20 a.m. call to shift command, but waited to call his parents because his "mom [doesn't] get up

2

until like 8:30 or 8:00." Plaintiff's parents arrived at his home, helped him lie down in their van and drove Plaintiff to his chiropractor, Dr. Liedel. When they arrived at Dr. Liedel's office, Mr. Mitchell helped Plaintiff out of the van and Plaintiff went into the doctor's office on his own. Plaintiff's mother, apparently without being asked by Plaintiff, brought with her a blank copy of the FMLA documents (including the certificate of health care provider form) that the Department required for FMLA leave. Dr. Liedel determined that Officer Mitchell was presently incapacitated and was unable to work through March 14, 2005.

Plaintiff's parents drove him home after his appointment with Dr. Liedel and helped him back to bed. Mrs. Mitchell further testified that she provided her son with a bucket to urinate in, and then left him for awhile and returned later with food. Mr. Mitchell testified that he did not see Plaintiff until two days later when Plaintiff needed to be driven back to the chiropractor. The chiropractor's notes indicate:

> Patient reported to our office after experienc[ing] a fall on an ice patch in his driveway. Patient explained that he hit his head and landed on his buttocks. Patient experienced pain and tightness in entire lumbar region, spasms localized at the L3, L4, and L5 region. Cervical region noted tightness along with spasms. Thoracic region noted as stiff. Patient was advised to continue with care plan 3 visits weekly for 3 weeks. Multiple adjustments rendered along with heat therapy and traction techniques.

After Plaintiff's visit to Dr. Liedel on February 23, 2005, Plaintiff's mom faxed the Department completed FMLA documents requesting leave for Plaintiff from February 23, 2005, to March 14, 2005. On February 23, 2005, Plaintiff also called the Department personnel office and talked to the personnel officer, John Asquini ("Asquini"), to make sure Asquini had received Plaintiff's FMLA request for leave. Plaintiff did not discuss missing his drug test with Asquini. The request for FMLA leave was approved by the Department and at all times the Department has accepted the

3

diagnosis received by Plaintiff indicating that he was incapacitated on February 23, 2005. On March 14, 2005, Plaintiff's back had not sufficiently healed for him to return to work. Therefore, he requested additional leave time from March 14 to March 23, 2005. His leave request was approved by the Department.

On March 1, 2005, Kreyger received a report from the clinic indicating that Plaintiff had not appeared for his random drug-screening test on February 23, 2005.  On March 7, 2005, Kreyger contacted Plaintiff regarding his failure to appear for the drug test on February 23, 2005. When asked why he did not appear for the test, Plaintiff explained to Kreyger that he had suffered a severe back injury and was unable to move, thus preventing him from appearing at the clinic on that day. Kreyger reviewed the medical records provided by Dr. Liedel indicating that Plaintiff was incapacitated.  Kreyger concluded that Plaintiff was manipulating the system by exercising his rights under the FMLA.

After Plaintiff's termination, his Union, Local 502, grieved Plaintiff's termination as a "violation of the officer's due process rights and the 'just cause' standard, contained in the Collective Bargaining Agreement."  The Collective Bargaining Agreement ("CBA")  between the Union and Wayne County includes a detailed drug policy, which provides in pertinent part that "an employee who refuses to submit to a drug test in accord with this policy shall be permanently removed from the County service."  On September 27, 2005, Plaintiff filed the instant lawsuit.

On October 19, 2005, after this lawsuit was filed, Arbitrator Betty R. Widgeon issued an Arbitration Opinion and Award.  After hearing the testimony of Plaintiff and Kreyger, as well as reviewing 14 exhibits and closing arguments in the form of written briefs from the parties, Arbitrator Widgeon issued a written denial of Plaintiff's grievance concluding as follows:

4

> Since August, 1999 Management has instituted a zero tolerance for incidents it deems counter to its goal of promoting professionalism within the department. The Arbitrator is satisfied, by a preponderance of the evidence, that Grievant's response constituted a violation of Section 43.02[C] of the CBA, and that Employer had just cause to impose the provisions of said section on his. Thus, the Arbitrator hereby denies the grievance and sustains the termination.

Plaintiff did not appeal the Arbitration Award.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56©.  A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S.

at 324.  The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

Under the FMLA, an eligible employee is entitled to a total of 12 weeks leave during any 12-month period to care of a spouse, child or parent with a "serious health condition," or if the employee has a "serious health condition" that renders the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(C)-(D). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.114(a).  To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave. *Hoge v. Honda of America Mfg., Inc.*, 384 F. 3d 238, 244 (6th Cir. 2004); *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 723-724 (6th Cir. 2003). Notice may be adequate even if the employee does not expressly reference FMLA when making his request. "[A]n employee gives sufficient notice when he provides enough information for the employer to reasonably conclude that an event described in 2612(a)(1) has occurred." *Cavin*, 346 F.3d at 723-724; *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003).

An employer may require that the employee submit medical certification supporting the request. 29 U.S.C. § 2613(a). The employer's request for medical certification, however, must be in writing and give specific notice of the employee's obligation to provide certification and the consequences for failing to do so. *See* 29 C.F.R. §§ 825.301(b), 825.305(a); *Perry*, 353 F.3d at 514;

*Rodriguez v. Ford Motor Company*, 382 F. Supp. 2d 928, 935 (E.D. Mich. 2005).

Persons claiming a violation of the FMLA can proceed under two theories – the "interference" theory and the "retaliation" theory.

**A.     Interference with Rights under the FMLA**

The interference provision provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To state a *prima facie* interference claim a plaintiff must show that:

> (1)     He is an eligible employee;
>
> (2)     Defendant is a covered employer;
>
> (3)     He was entitled to leave under the FMLA;
>
> (4)     He gave defendant notice of his intent to take leave; and
>
> (5)     Defendant denied him FMLA benefits to which he was entitled.

*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005); *Hoge*, 384 F. 3d at 244; *Arban v. West Publ'g Co.*, 345 F.3d 390 (6th Cir. 2003); *Cavin*, 346 F.3d at 719, 723-24. In the present case, there is no dispute that the first three elements have been satisfied.

Defendants argue that Plaintiff failed to give Defendants notice of Plaintiff's intent to take leave in the required manner. The Court finds that this argument lacks merit. First, as Defendants acknowledge in their Brief, adequate notice is given when an employee provides enough information to an employer to reasonably conclude that an event described in 2612(a)(1) has occurred. *Cavin, supra; Perry, supra*. There is evidence that Plaintiff provided notice of a qualifying event when, in accordance with Department Policy, he called and spoke with a commanding officer at 5:20 a.m.

on February 23, 2005, and alerted him to the fact that Plaintiff had suffered a severe back injury, could not move, and was going to have to go to the doctor to have it checked. Plaintiff followed up that verbal notice with written documentation of his back injury later that same day. In addition, the Defendants were aware Plaintiff had experienced problems with, and been on medical leave twice the previous year with respect to, his back.[1]  At a minimum, this creates an issue of material fact as to whether Plaintiff put the Defendants on notice that he was experiencing a serious health condition as provided for under the FMLA.

Defendants suggest that because the written request for leave under the FMLA was submitted by Plaintiff to Defendants after he failed to submit to a drug screen urinalysis, Plaintiff did not provide adequate notice. Defendants do not, however, cite any authority for this proposition, nor is the Court aware of any legal support for Defendants' proposition. Moreover, as the precipitating event that led to Plaintiff's leave was not foreseeable, the FMLA did not require Plaintiff to submit written documentation to Defendant prior to taking leave, but only to provide such notice as was practicable. *See* 29 U.S.C. §2612(e). Here, Plaintiff called shift command upon learning he could not work, then followed up that call by providing the Department with written documentation, including FMLA documents, the same day. Finally, Kreyger acknowledges that the only written policy instructing Plaintiff what to do in this situation was the sick leave policy, which required him

---

[1] Prior to his FMLA leave in February 2005, Plaintiff requested and was approved for FMLA leave on three other occasions and was restored to employment without incident or complaint. In July of 2004, Plaintiff sustained a severe lower back injury. As a result of the injury, Plaintiff was forced to go on a medical leave from July 24 through August 2, 2004. Subsequently, in October of 2004, Officer Mitchell suffered a recurrence of his back problems and was required to take a medical leave from October 15 through October 20, 2004. According to Plaintiff and Plaintiff's mother, Plaintiff had his mom receive and send faxes to and from the Department regarding Plaintiff's FMLA paperwork.

8

to call in an hour before his shift started. Kreyger acknowledges Plaintiff satisfied that requirement, and she admits there is absolutely nothing in writing requiring Plaintiff to call anyone with respect to the drug test.

Defendants next argue that Plaintiff was afforded all of his rights under the FMLA when the Department approved his FMLA leave and restored him to his previous position, or an equivalent position, upon his return from FMLA leave. Under the FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work. *See* 29 C.F.R. § 825.216(a). The FMLA does not protect individuals from termination for reasons unrelated to the leave itself. *See*, e.g., *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998). An employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed had he not taken FMLA leave. *Hoge*, 384 F.3d at 245. Defendants contend that Plaintiff received all of the benefits to which he was entitled under the FMLA because he was not terminated until after (1) he returned from leave, (2) he was suspended with pay, and (3) an investigation was conducted into his missed drug test (which, Defendants claim, had nothing to do with Plaintiff's FMLA leave).

The Court finds that, even if Defendant's assertions are true, Plaintiff has still presented evidence that he has not received all benefits to which he was entitled under the FMLA because he was never restored to his position. Under the FMLA, at the end of his leave period, Plaintiff was entitled to reinstatement to the same position he held when he commenced his leave. 29 C.F.R. § 825.214. In the instant case, it is a matter of dispute whether Plaintiff was ever reinstated to his previous position at the end of his leave. Plaintiff's leave ended on March 23, 2005, and he was cleared by his physician to return to work on March 24, 2005. When Plaintiff presented his return

9

to work certificate on March 23, 2005, he was advised that he was not to report to work on March 24, 2005, and was to wait to hear from Kreyger. Plaintiff was then instructed to report on March 25, 2005.  When he reported to work on March 25, 2005, he was immediately suspended.  At the administrative review hearing on April 1, 2005, Plaintiff was informed that he was being terminated for refusing to submit to a random drug test.  Plaintiff was not paid for the week of his suspension and never returned to any active duty with the County.  As such, the Court cannot conclude as a matter of law that Plaintiff was restored to his position when he was suspended without pay upon return from FMLA leave.

**B.     Retaliation Claim**

Plaintiff contends that Defendants retaliated against him for exercising his rights under the FMLA.  The retaliation provision under the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).  A retaliation claim under the FMLA is analyzed under the burden-shifting framework used in Title VII claims, which was originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See also*, *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F. 3d 309, 315 (6th Cir. 2001).

Under the *McDonnell Douglas* framework, Plaintiff first has the burden of proving, by a preponderance of the evidence, a prima facie case of retaliation. *See, Burdine*, 450 U.S. at 252-53. Plaintiff may meet this burden by showing that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the protected activity and the adverse employment action. *Saroli*, 405 F.3d at

10

451 (citing *Skrjanc,* 272 F.3d at 314); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If Plaintiff establishes a prima facie case, Defendants must then articulate a legitimate, non-retaliatory reason for discharging Plaintiff. *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000). To meet their burden, Defendants "must clearly set forth, through the introduction of admissible evidence, the reasons. . ." for the discharge. *Burdine*, 450 U.S. at 225. Should Defendants carry this burden, Plaintiff then has an opportunity to prove, by a preponderance of the evidence, that Defendants' stated reason is pretext for unlawful retaliation under the FMLA. *Id.* at 253.

The first two elements for establishing a prima facie case are not in dispute here. As to establishing a causal connection between Plaintiff's taking FMLA leave and his termination, the Court is mindful that Plaintiff's burden in establishing a prima facie case is not intended to be an onerous one. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir.2001). In this case, Kreyger has admitted that the FMLA leave taken by Plaintiff motivated her decision to terminate his employment. Kreyger testified as follows:

> Q: Did you think Officer Mitchell was manipulating the system?
>
> A: Yes.
>
>                \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Q: Okay. But at the time you made your determination on what you were going to do with Officer Mitchell, you knew he was on approved leave, correct?
>
> A: I can't say that it was an approved leave, that he requested a family medical leave from the 23rd.
>
> Q: And what effect did that have on your decision, that you knew he had requested a Family and Medical Leave Act leave from the 23rd through the 14th of March?

>A: I don't know what you mean by what effect.
>
>Q: Did that have an effect on your decision? What effect did the fact that Officer Mitchell had requested Family Medical Leave Act leave as of February 23rd have on your decision to terminate him?
>
>A: If you're asking me did I take this into consideration, the answer is yes. Is that what you're asking?
>
>Q: Okay. You took it into consideration. How so?
>
>A: Several aspects. One, I thought it was suspicious that he applied for family medical leave the day he was supposed to go for the test. Two is that we weren't asking him to do work of a police officer. We were asking him to take a drug screen.

The fact that Plaintiff was terminated immediately upon his return from FMLA leave also constitutes evidence that supports a finding of retaliation. The Court therefore concludes that Plaintiff has satisfied his burden of showing that there is a causal connection between his FMLA leave and his termination and, therefore, has established a prima facie case.

Defendants argue that, even assuming Plaintiff can establish a prima facie case of retaliation, Defendants had a legitimate business reason for terminating Plaintiff, *i.e.*, Plaintiff's failure to appear for his drug screen urinalysis on February 23, 2005 at 8:15 a.m. Accordingly, the Court concludes that Defendants have met their burden of setting forth a non-retaliatory reason for discharging Plaintiff. Defendants then contend that Plaintiff cannot demonstrate that the Defendants' asserted legitimate business reason was pretext for violation of the FMLA. Defendant relies on the arbitrator's decision upholding Defendant's termination of Plaintiff as conclusory evidence that Defendants did not retaliate against Plaintiff in violation of the FMLA. In deciding this motion for summary judgment, the Court cannot agree.

The testimony of Kreyger alone constitutes evidence from which a fact finder could

conclude that Plaintiff's termination was related to the FMLA leave he exercised. In addition to the language quoted above, Kreyger stated that (1) Plaintiff was not entitled to the leave time on February 23, 2005, (2) he was required to report for a drug test on the morning of the 23rd, and, therefore, (3) Plaintiff could not receive or exercise his leave rights at that time regardless of the fact that he had sustained an injury to his back the night before. These statements are contrary to (a) the fact that the Department approved Plaintiff's leave (including the extension), (b) Plaintiff was out of work for about a month, and (c) the rules other employees of the Department have said that they have followed with respect to giving drug tests.

For example, Asquini, the person responsible for scheduling of random drug tests, testified that employees on leave were not tested under the Department's random drug test policy.[2] Asquini also testified that employees scheduled for a test who called in sick on the date of the test were either tested on the next day that they returned to work or were simply tested at a later date. In fact, in this case, Asquini simply advised Plaintiff's sergeant to return the drug screen paperwork so that the test could be rescheduled for a later date. Finally, Asquini stated that he did not believe that a person in Plaintiff's condition, and who followed the steps that Plaintiff did, would be required to take the test.

The conflicting testimony of Kreyger and Asquini constitutes sufficient evidence, as least for purposes of surviving a summary judgment motion, that Defendants' decision to terminate the Plaintiff was directly related to the exercise of Plaintiff's rights under the FMLA, and that the

---

[2]Under the Random Drug testing policy as of February 2005, ten officer's numbers were drawn each month and they were served with a notice of a drug screen. If the officer was sick or on leave on the day the test was scheduled to be conducted, the officer was tested upon their return to duty or at a later date.

suspension and termination were causally connected to Plaintiff's FMLA leave.

For the foregoing reasons, the Court holds that there is evidence from which the fact finder could conclude that Defendants' stated reason for terminating Plaintiff (*i.e.*, Plaintiff's failure to appear for the random drug screen on February 23, 2005) was mere pretext for retaliatory discrimination.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  December 8, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 8, 2006.

S/Marie E. Verlinde
Case Manager
(810) 984-3290